2:23-mj-666

# INTRODUCTION

I, Alexa Montesano, (hereafter referred to as affiant) been duly sworn depose and state:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 United States Code, Section 2516(1). During this time, your affiant has accumulated the following training and experience:

2. I graduated from the DEA Academy located in Quantico, Virginia in 2021. I received approximately 16 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, and money laundering investigations.

3. As a DEA agent, I have participated in the execution of numerous search warrants at residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous search warrants and investigations for drug related offenses.

4. As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, fentanyl, and its analogues, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801. I know that these are controlled substances under 21 U.S.C. § 801.

5. During the course of my law enforcement career, I have had experience in debriefing defendants, interviewing participating witnesses, cooperating individuals, and other persons who have personal knowledge and experience regarding the amassing, spending,

conversion, transportation, distribution and concealment of records and proceeds of trafficking in controlled substances.

6. Before joining DEA, I was a police officer for approximately two years, during the course of my law enforcement career, I have had experiences with narcotics investigations.

7. The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, and from persons with knowledge regarding relevant facts and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this investigation.

## PROBABLE CAUSE

8. In October 2022, members of the DEA Columbus District Office (hereinafter, "CDO") established an investigation into the Charles ALLEN (hereinafter, "**ALLEN**") Drug Trafficking Organization (hereinafter, "DTO"). During the course of the investigation to date, investigators have identified **ALLEN** to be distributing fentanyl and cocaine in the Columbus, Ohio, area. Investigators have interviewed a cooperating source (hereinafter, "CS"), who confirmed **ALLEN** to be a fentanyl and cocaine distributor in Columbus, Ohio. Investigators have identified 1507 Arlington Avenue, Columbus, Ohio, as **ALLEN**'s primary residence, and 1506 Arlington Avenue, Columbus, Ohio, and 93 Bird Street, Gahanna, Ohio, as stash house locations for **ALLEN**'s narcotics. 1507 and 1506 Arlington Avenue are located within 1,000 feet of the Linden Park Early Childhood Education Center located at 1400 Myrtle Avenue, Columbus, Ohio. Information provided by the CS has been corroborated by your affiant, and/or other investigators assigned to the case. This corroboration was achieved through various investigative techniques to include but not limited to, administrative subpoenas, tracker warrants, geo-location warrants, and controlled purchases of fentanyl and cocaine.

9. In the month of May, through a series of recorded telephone calls between the CS and **ALLEN,** utilizing 614-818-8511 (hereinafter referred to as "8511"), **ALLEN** agreed to

2

distribute cocaine to the CS at 1507 Arlington Avenue. During pre-surveillance, investigators observed **ALLEN** exit 1507 Arlington Avenue and depart the area in his respective vehicle. Through a court authorized federal search warrant for geo-locations data, investigators observed the geo-location of 8511 moving away from 1507 Arlington Avenue. Investigators maintained electronic surveillance on **ALLEN** and maintained physical surveillance at 1507 Arlington Avenue.

10. Prior to the CS arriving at 1507 Arlington Avenue, investigators searched the CS and the CS' vehicle for contraband and/or currency with negative results. The CS was provided with a recording device and Official Advanced Funds (OAF) to purchase the narcotics from **ALLEN**. Investigators observed the CS arrive at 1507 Arlington Avenue. A few moments after the CS arrived at 1507 Arlington Avenue, investigators observed **ALLEN** arrive at 1507 Arlington Avenue. The CS and **ALLEN** then entered into 1507 Arlington Avenue. Investigators observed the geo-location of 8511 to be in the area of 1507 Arlington Avenue. While inside of 1507 Arlington Avenue, the CS exchanged $4,600.00 in OAF for approximately 240 gross grams of cocaine and exchanged $400.00 for approximately 90 gross grams of fentanyl.

11. Approximately an hour later, investigators observed the CS and **ALLEN** walking away from 1507 Arlington Avenue engaged in conversation. After a brief conversation, the CS entered into his/her vehicle and departed the area. At the same time that the CS entered into his/her vehicle, investigators observed **ALLEN** enter into his respective vehicle and depart the area. Pursuant to the meet, the CS provided investigators with approximately 240 gross grams of cocaine and approximately 90 gross grams of fentanyl, which later field tested positive for fentanyl, which was purchased from **ALLEN** with OAF. Investigators searched the CS and the CS' vehicle for contraband and/or currency with negative results.

12. In or about June 2023, the CS provided investigators with **ALLEN**'s new telephone number, (614) 212-3042, (hereinafter referred to as "3042"). Through a series of recorded telephone calls between the CS and **ALLEN, ALLEN** agreed to conduct the narcotic transaction with the CS at 93 Bird Street in Gahanna, Ohio. Prior to the meet between the CS and **ALLEN**, investigators searched the CS and the CS' vehicle for contraband and/or currency with negative

results. The CS was provided with a recording device and OAF to purchase the narcotics from **ALLEN**. The CS and the CS' vehicle arrived at 93 Bird Street and was met by **ALLEN**. While inside of 93 Bird Street, the CS exchanged $1,000.00 in OAF for approximately 90 gross grams of fentanyl from **ALLEN**. Pursuant to the meet, the CS provided investigators with approximately 90 gross grams of fentanyl, which was later tested by the DEA North Central Laboratory and tested positive for fentanyl, which was purchased from **ALLEN** with OAF. Investigators searched the CS and the CS' vehicle for contraband and/or currency with negative results.

13. In the month of July 2023, through a series of recorded telephone calls between the CS and **ALLEN**, **ALLEN,** agreed to distribute fentanyl to the CS at the 1506 Arlington Avenue. Investigators observed, through electronic surveillance, the geo-location of 3042 in the area of 1506 Arlington Avenue. Prior to the CS arriving at 1506 Arlington Avenue, investigators searched the CS and the CS' vehicle for contraband and/or currency with negative results. The CS was provided with a recording device and OAF to purchase narcotics from **ALLEN**. Investigators observed the CS arrive at 1506 Arlington Avenue, exit his/her vehicle, and enter onto the front porch of 1506 Arlington Avenue. After there was no answer the front door, the CS was waved around to the side of 1506 Arlington Avenue by **ALLEN**.

15. Approximately 30 minutes later, investigators observed **ALLEN,** empty handed, exit 1506 Arlington Avenue and enter into the side door of 1507 Arlington Avenue. A few minutes later, investigators observed **ALLEN** exit 1507 Arlington Avenue, carrying a box, and enter into the front door of 1506 Arlington Avenue. While inside of 1506 Arlington Avenue, the CS exchanged $3,000.00 in OAF for approximately 130 gross grams of fentanyl, from **ALLEN**.

16. Approximately 20 minutes later, investigators observed the CS exit 1506 Arlington Avenue, enter into his/her vehicle, and depart. Pursuant to the meet, the CS provided investigators with approximately 130 gross grams of fentanyl, which later field tested positive for fentanyl, which was purchased from **ALLEN** with OAF. Investigators searched the CS and the CS' vehicle for contraband and/or currency with negative results. The CS implied that 1506 Arlington Avenue was being remodeled and **ALLEN** had to retrieve a blender from 1507 Arlington Avenue to "mix"

the fentanyl. Investigators did hear what sounded like a blender running in the background on the recorded device.

17. Throughout this investigation, investigators have conducted three controlled purchases from **ALLEN** resulting in the seizure of approximately 310 gross grams of fentanyl and approximately 240 gross grams of cocaine. Two out of the three controlled purchases occurred at 1507 and 1506 Arlington Avenue and were conducted within 1,000 feet of a school zone.

18. Based on my training, experience, and my review of the evidence gathered by investigators assigned to this investigation, there is probable cause to believe that Charles Anthony **ALLEN** has violated 21 U.S.C 841(a)(1), Possession with Intent to Distribute a Detectable amount of Fentanyl, 21 U.S.C 841(a)(1), Possession with Intent to Distribute a Detectable amount of Cocaine, 21 U.S.C. 860, Distribution or Manufacturing in or near a School Zone.

Alexa Montesano
Drug Enforcement Administration
Special Agent

SUBSCRIBED and SWORN to before me this __30th__ day of November, 2023. Time: __11:34 AM__

Elizabeth A. Preston Deavers
United States Magistrate Judge